S. B. DEAKINS v. W. T. ALLEY, Ex'r, et al.

SALES OF LAND. *In gross or per acre. Parol evidence. Pleadings and prac-*
*tice.* Where it is uncertain from the face of the deed or bond, whether
the sale was in gross or per acre, parol evidence is admissible to show
the intention of the parties; and where it appears from the face of
the deed or bond that the sale was in gross, it may be shown to have
been a sale per acre, upon allegation and proof that the deed or bond
was so drawn through fraud or mistake.

FROM MARION.

Appeal from the Chancery Court at Jasper. W.
M. BRADFORD, Ch.

W. D. SPEARS for complainant.

F. V. BROWN for defendants.

FREEMAN, J., delivered the opinion of the court.

The leading questions in this case are, whether a
tract of land sold by the Bennetts to complainant was
sold in gross or by the acre, and the acreage misrep-
resented by vendor.

The complainant charges that he bought the land
in 1875, took a title bond for the same, at $33.50
per acre; that the vendor represented to him at the
time, that there was one hundred and ninety-one acres
in the land covered or included by the title bond;
that the land had been recently surveyed by the county
surveyor, and according to that survey there was not the

number of acres stated. It is further charged that complainant had confidence in the statement thus made, and relied upon it wholly as to the number of acres in the tract.

In support of this view, it is further stated, that when they met to execute the title bond, and complainant gave his notes for the purchase money, the amount of the notes was ascertained, by estimating the land at one hundred and ninety-one acres, and the price at $33.50 per acre.

If complainant has established these charges he is entitled to a decree for the alleged deficiency in the tract. If not, he fails. The tract is shown by actual survey to contain only one hundred and sixty-six acres and a fraction, making a deficiency of about twenty-five acres, and at the price stated, of over eight hundred dollars—the whole price of the land being, as charged, $6,400, for which six notes were given—all of which have been paid, we believe, but the last two.

Respondents, after insisting that the face of the title bond conclusively shows that the sale was in gross, and a gross sum agreed to be paid for the land specified in the bonudaries set out, deny specifically each and every charge of the bill, except a qualified admission that the calculations, as charged, were made at the time of giving the notes, but say (if any were made) they were made merely out of curiosity as to the price paid per acre by complainant. In support of these denials it is added, that complainant thoroughly knew the land and its boundaries, had repeat-

edly gone over it, and was as competent to estimate the acreage as the vendor. It is also suggested, that if the sale had been by the acre, the number of acres could as readily have been ascertained then as five years after, when the bill was filed.

The first question to be settled is, whether the title bond or the original memorandum, by their terms show the sale to have been in gross, that is, a sale of the tract of land included in the boundaries given, and whether, under the facts in this case, parol proof can be looked to, to show the sale to have been made by the acre.

The language of the bond is: "I have this day bargained and sold to the said Deakins, for the consideration of $6,400, the following described tract of land,"—giving the boundaries specifically. After this it is recited that Deakins had executed his six promissory notes, each for $1,080, except the first, which is $1,000, and then the usual condition to make title to the land described on payment of the purchase money. The memorandum of the contract substantially agrees with the bond.

In the case of *Barnes* v. *Gregory*, 1 Head, 234, the contract, which was a deed, described the land, and added, it "contained thirty acres more or less," and the consideration was stated to be a gross sum of $1,050. It was contended, on a bill to allow for a deficiency, that the deed was alone to be looked to as containing the contract of the parties, and parol testimony could not be heard to change it.

The general rule was stated to be undoubtedly cor-

Deakins v. Alley.

rect, but it was distinctly held that on a bill charging fraud or mistake in the quantity of the land, the written contract might be contradicted by parol, and the deficiency was allowed to be shown notwithstanding the statement in the deed that there was "thirty acres in the tract more or less"

The court say: "The deed is silent as to the disputed questions, whether the sale was by the acre or in gross, and that parol evidence was admissible to show how the fact was"—adding: "Such is the uniform course of decision where there is a substantial deficiency, and the contract by the acre; or even in gross, where there is fraud or imposition," citing *Bently* v. *Miller*, 5 Sneed, 671. These cases were followed by this court in the case of *Witherspoon et al.* v. *Porter et al.*, Legal Rep., vol. 1, pp. 51-2. Here the title bond is entirely silent as to whether the contract was by the acre or in gross—the amount of the consideration alone being given, but whether arrived at by assuming or ascertaining the number of acres, and finding the sum at the agreed price, is not stated.

The bill goes on the idea that there was a representation made by Bennett as to the number of acres, that is, that there was one hundred and ninety-one acres, and this representation relied on by the vendee, and that this was untrue. Such a representation, relied on by the other party, which turns out to be untrue, and producing loss, has all the elements essential to legal fraud or mistake, especially when taken in connection with the fact that the failure in quantity amounts to about one-seventh of the value of the land.

32—VOL. 9.

On looking to the testimony in the record, we think the clear preponderance is in favor of the theory of complainant's bill.

The complainant swears most definitely to the facts as charged. The defendant, as is usual in such cases, as definitely the other way, and insists that the land was simply sold for $6,400, in gross, without regard to acreage.

It appears, however, that the trade was made some weeks before the execution of the title bond, and a memorandum of the contract drawn up at the time— the title bond drawn afterwards in pursuance of this contract. This contract was witnessed at request of the parties. This witness swears as his best recollection that a calculation was made in his presence for the price of the land, at about $33.33 or $33.50 per acre. When the title bond was drawn, another calculation was made, and Mr. Spears, the attorney, swears that his recollection is that about $33.50 per acre was the amount spoken of, though he does not recollect to have heard the number of acres stated. The parties seem to have been business men, and competent to make their own calculations, and no doubt did so. Other witnesses give conversations with Bennett, in which the price of the land is spoken of as having been as stated, $33.50 per acre.

This, in connection with the cautious, but fairly implied admission in the answer, with the unsatisfactory explanation given of it, "that if calculations were made it was only out of curiosity to see how much the $6,400 would be per acre, gives an unquestioned

preponderance in favor of complainant's view of the transaction. The calculation could not have been made without assuming as a basis for it the number of acres, as understood between the parties, and this understanding most naturally came from the representation of the vendor. The land having been recently before this surveyed in a body, and three small tracts sold off, each of which had been surveyed, and the amount known, furnished the basis on which such a statement might well have been made.

In addition, there are other considerations that tend strongly to support this view. The land was, part of it, perhaps forty or fifty acres, within the corporation of the town of Jasper. Portions of the tract had been laid off into town lots, and is shown to have been favorably located for such use. The vendee was purchasing with a view of utilizing a portion if not all in this way. It would be a most unbusiness-like proceeding, had he bought such a tract of land, guessing at the quantity, under such circumstances, and especially when it appears that it was deemed by his friends somewhat doubtful whether he would not be pressed to pay for it; and probably, if not certainly, he relied on sale of part for town lots as the means of enabling him to do so. Business men do not purchase land in and near towns with such views, without knowing how many acres they are purchasing; nor do such men usually sell, without having a definite idea of the acres sold. We may add, in corroboration of this view, the fact that the other three small tracts sold off the land by the vendor, lying further from

town we believe, show the habit of business of the vendor, and seem to have been sold by the acre, and regularly surveyed to ascertain the number of acres in each.

The result is, the chancellor's decree must be reversed, and a decree entered here in accord with this opinion and with the terms of the agreement in the record, against the lands attached. Respondent Bennett will pay the costs of this court. Costs of court below to be paid out of the fund arising from the sale.